## WILLIAMS *v.* SMITH.

1. In an ejectment suit where the parties derive title from a common grantor, the plaintiff can not recover upon the strength of his legal title, where it appears that the deed from a common grantor under which the defendant claims is the older, it not appearing that either is recorded.

(*a*) The defendant may defeat a recovery upon an equitable title by pleading and proving that he was a bona fide purchaser for value, without notice, from one claiming under the common grantor.

(*b*) When it is affirmatively shown that the defendant is a bona fide purchaser for value from one claiming under the common grantor, and there is nothing to show actual knowledge to the purchaser of the alleged equity, or knowledge of any fact sufficient to put him upon inquiry, the presumption arises that he is a purchaser without notice, and the onus of proving notice is shifted to the plaintiff.

(*c*) In such case the record upon the minutes of the superior court, of a petition by the guardian of the plaintiff to the judge, and his order thereon regularly made under the provisions of Civil Code, §§ 2545-6, which fully discloses the plaintiff's equity, is not such a record as will, as a matter of law, charge notice thereof to a purchaser for value.

(*d*) Such a record, in the absence of proof of actual knowledge of some fact sufficient to charge the duty of inquiry, is not sufficient to prove notice, either in law or fact, to a purchaser for value.

(*e*) A communication to such purchaser of a mere "rumor" that the title was "bad" before the purchase, which communication was unattended by any further explanation, or any statement tending to call the purchaser's attention to the equity asserted by the plaintiff, was not sufficient to put him upon inquiry so as to charge him with notice.

(*f*) The uncontradicted evidence showing the deed under which the defendant claimed from the common grantor to be the older, and the defendant to be a purchaser for value, and the plaintiff having failed to prove notice of her equitable title, it was erroneous for the court to direct a verdict in favor of the plaintiff.

2. Where a deed is unambiguous and purports to convey the present title, parol evidence, not directed to proof of such attendant circumstances as to raise an implied trust, is not admissible for the purpose of contradicting the deed by showing that it was not intended to become binding until the happening of a future event to be brought about by the grantor.

Argued February 25,—Decided May 16, 1907.

Complaint for land. Before Judge Rawlings. Johnson superior court. March 24, 1906.

The plaintiff claims as remainderman after the termination of the life-estate, under a deed executed by G. C. Raines, dated August 10, 1892, conveying the premises in dispute to Ruth D. Walker for life, and at her death to Ritie Anna Walker and Lena A. Walker, her minor children. This deed recited that it was made in pursuance of certain proceedings had before the judge of the superior court of the county of the residence of the grantee in the deed. The proceedings in question were under the Civil Code, §§ 2545-6, and it was therein shown to the court that Ruth D. Walker, as life-tenant, and Ritie Anna Walker and Lena A. Walker as tenants in remainder, owned certain property of the value of $700, which they desired to sell for that sum, and that they desired to reinvest the proceeds in the land in dispute at the same price. The transaction was equivalent to a mere exchange of property. A guardian represented the children, and the proceedings before the judge for the sale and purchase were in all respects regular, and the judge passed an order granting the application. The petition appears to have been presented to the judge at chambers on July 4, 1892, and the order granting it appears to have been made the same day. The entire record appears to have been filed in office July 16, 1892. The defendant, Williams, claimed under a chain of title commencing in a deed executed by the plaintiff's grantor, G. C. Raines, conveying the property in dispute to W. E. Walker individually, dated October 17, 1887. This deed was a plain warranty deed, expressing a consideration of $700, and made no reference to the transaction which was recited in the deed under which the plaintiff claimed. The next link in the defendant's chain of title was a deed from W. E. Walker individually to the defendant, which was also a plain warranty deed, expressing a consideration of $250. The defendant introduced evidence to the effect that Walker individually executed a mort-

gage on the premises in dispute, dated March 4, 1900, to U. R. Jenkins, for the purpose of securing the payment of a promissory note for $192.50, and interest, and that the defendant bought this mortgage, and that the conveyance by Walker to Williams, in addition to the money consideration paid, was for the further consideration of satisfying this mortgage debt. The defendant claimed to have been a bona fide purchaser for value, without notice of any interest which the plaintiff may have had in the property.

The plaintiff introduced evidence to the effect that at the time the common grantor, Raines, executed the deed to W. E. Walker, under which the defendant claims, no money consideration was paid, and that the recital of the money consideration in that deed was mere fiction; that the wife and daughters of W. E. Walker owned a certain tract of land upon which the W. E. Walker family resided, and which W. E. Walker agreed to exchange with Raines for the premises in dispute; that an agreement to that effect was made with the express understanding that Walker should obtain an appropriate order of court authorizing the exchange. Upon this understanding the exchange was made, and Walker, with his family, surrendered possession of the property upon which they were then residing, and entered upon the premises in dispute. The deed was made to Walker individually, instead of to the wife and minor children. After the suit was instituted and before the trial, the defendant, Williams, died, and his representative was made a party in his stead.

Upon the question of notice to Williams, the main evidence offered by the defendant is found in the testimony of Mrs. Williams, who said: "Before buying this land, my husband employed and paid a lawyer to investigate the title of this land, who repeated to him that the title was good. My husband would not pay until he had the title investigated." In order to meet certain testimony of the witness W. G. Smith, who had testified for the plaintiff to the effect that he, Smith, had gone to the home of Williams and left a message for Williams to come to see him about this land, Mrs. Williams further testified that "before Mr. Smith came to our house on this occasion, my husband had bought this land and paid for it, and had this deed from W. E. Walker to it. The deed was in the house in his trunk when Mr. Smith came over to see my husband about this land." W. G. Smith, for the plaintiff,

testified: "J. E. Williams, in response to my message to his wife, came to see me about it.   I told him if he bought this land he would not get a good title, and that if he would meet me in Wrights-ville and go over the record, I could show him.  He agreed to meet me at Wrightsville next Monday and search the record.  He did not meet me.  I saw him in Wrightsville about two weeks after-wards, and I asked him why he didn't meet me as he promised. He said he had bought the land and paid for it, and it would have done no good.  He did not have a deed when I first spoke to him to meet me and search the records."  Elijah Carter testi-fied: "It was rumored that the title was bad, and this kept me from buying it.  I had a talk with J. E. Williams about buying it.  I told him I heard he was speaking of buying it.  He said, 'yes.'  I told him the title was bad, and he said he had the records searched and it was all right."   T. J. Hightower testified: "I told him [Williams] that there  were rumors that the title was bad.   I did not tell him what the rumors were.  I think this was before he bought."   A. A. Walker testified: "I was talking with him [Williams] about this land, and told him the title was bad.   This was before he bought."

With reference to the circumstances under which the deed by Raines to W. E. Walker individually was executed, and under which Walker was admittedly in possession of the premises in dis-pute, the witness Raines testified: "I did make W. E. Walker a deed to this land.   I made it to him individually, but with the un-derstanding that it was not to be of force unless he procured an or-der authorizing him to sell me his children's land and let me convey to his children this land in dispute."    This testimony was ad-mitted over the objection of counsel for the defendant, the objec-tion being that "it contradicted and varied the terms of said deed, which could not be done by parol, and that no condition in said deed could be shown by parol."   Upon the conclusion of the evi-dence, the court directed a verdict in favor of the plaintiff for the premises in dispute.   In the bill of exceptions error is assigned upon the direction of the verdict, and upon the refusal to sustain the defendant's objection to that part of the testimony of G. C. Raines which was admitted in evidence over defendant's objection as already stated.

*J. L. Kent* and *Hines & Jordan,* for plaintiff in error.

*Daley & Bussey,* contra.

ATKINSON, J.   (After stating the foregoing facts.)

1. From the statement of facts it is seen that Raines executed two deeds to the premises in dispute.   Under the older of the two the defendant claims.   In support of an effort to avoid the effect of the older deed, the plaintiff introduced undisputed evidence to the effect that the sole consideration which moved Raines to execute the older deed to W. E. Walker was the conveyance to Raines of certain property belonging to Walker's wife, Ruth D. Walker, and her minor children, Ritie Anna Walker and Lena A. Walker, their respective interests therein being a life-estate to Ruth D. Walker and a remainder interest to the children, one of whom is the plaintiff in the present case.   Under these conditions, when Walker took the legal title in his own name, the property immediately became impressed with an implied trust in favor of the wife and children, according to their several interests, as already stated. See, in this connection, Civil Code, §§ 3160, 3196; *Adams v. Jones,* 39 *Ga.* 479; *Brown v. Doane,* 86 *Ga.* 32; *Hurst v. Commissioners,* 110 *Ga.* 33; *McKinney v. Burns,* 31 *Ga.* 295; *Holmes v. Holmes,* 106 *Ga.* 858.   The wife and children could assert their equitable title against the husband, W. E. Walker, and against any one claiming under him with notice.   Civil Code, § 3932.

But it was claimed by the defendant, Williams, that he was a bona fide purchaser for value, without notice of the plaintiff's equitable title.   If he were such, he would be protected, and the plaintiff could not recover.   Civil Code, § 3934.   The facts, therefore, lead to the inquiry, was Williams such a purchaser?   The evidence is undisputed that he paid value.   There is no evidence that the amount was not full value.   Proof of such payment, in the absence of proof of notice, or of any fact sufficient in law to charge notice, or sufficient to put the purchaser upon inquiry, will raise the presumption that his purchase was without notice, and the onus will be upon the one asserting an equity in the property to prove notice thereof to such purchaser.   See, in this connection, *Johnson v. Neal,* 67 *Ga.* 528, where it is said: "Proof that a purchaser bought for value from the defendant in fi. fa. raises a presumption of good faith; and if it is desired to rebut this presumption by proof of actual notice of the judgment, the onus of

proving such fact is on him who asserts it." In Barton *v.* Barton, 75 Ala. 400 (cited in 23 Am. & E. Enc. L. 523), it was held that "the rule as to proof of bona fide purchase is, that the party pleading it must first make satisfactory proof of purchase and payment, it being affirmative defensive matter, in the nature of confession and avoidance; but this done, he need not go further, and prove that he made such purchase and payment without notice. The burden here shifts, and if it be desired to avoid the effect of such purchase and payment, it must be met by counter proof that before the payment the purchaser had actual or constructive notice of the equity or lien asserted, or of some fact or circumstance, which was sufficient to put him on inquiry, and which, if followed up, would have discovered the equity or incumbrance." In Morimura *v.* Samaha, 25 App. D. C. 189, cited in 6 Cur. Law, 814, n. 69, it is said: "Where creditors attack a conveyance by their debtor as fraudulent, the grantee must show the payment of consideration, and then the burden is on the creditors to show that the vendee had notice of his grantor's fraud."

In order to prove that Williams at the time of his purchase had notice of the plaintiff's equity, the plaintiff offered the testimony of several witnesses to the effect that they had informed Williams of certain "rumors" concerning the title; but in no instance does it appear that the alleged rumors bore any relation to the claim which is now asserted by the plaintiff. In that respect the record is silent. With the exception of one instance, it is not clear from the testimony of any witness that the rumors alluded to were communicated to Williams prior to the time of his purchase. In one instance, however (see testimony of A. A. Walker), it does affirmatively appear that Williams was told before he purchased that "the title was bad." Further than this, the record of this witness's testimony is likewise silent, and does not connect the criticism of Walker's title with the claim asserted by the plaintiff. In the absence of further statements to Williams upon this subject calling attention more specifically to the title which is now asserted by the plaintiff, the mere general statement that the title was bad was not sufficient to charge Williams with notice of the plaintiff's equitable title. The title may have been bad in some other respect. If so, that would be of no concern to the plaintiff in this case. The question is not whether Williams knew of some

other defect, but whether he knew of the outstanding, adverse equity which this plaintiff now asserts. Williams may have known of numerous other defects, and at the same time have been ignorant of the claim asserted by the plaintiff. In that event the knowledge of the other defects ought not to destroy the bona fides of his purchase, in respect to the claim of which he was ignorant. In *Black* v. *Thornton,* 31 *Ga.* 659, the trial court charged the jury: "A mere rumor brought to the knowledge of Reuben Thornton at or before the sale, or general report, that there was an outstanding claim or conveyance, without defining what sort of claim or conveyance, to whom or by whom, etc., is not notice to Reuben Thornton." Upon review of that charge in this court it was said, Jenkins, J., delivering the opinion: "The law is here correctly stated. The proposition is a simple truism." See also, in this connection, *Ratteree* v. *Conley,* 74 *Ga.* 153 (*a*). See also 37 Am. Digest (Century ed.), 1470, §5.; Raymond *v.* Flavel, 40 Pacific, 148. The testimony of the witnesses as disclosed by the present record does not go far enough to show actual notice of the plaintiff's claim, or of any fact connected therewith sufficient to have put Williams upon inquiry. Such testimony fails, therefore, either to show notice, or to render applicable the provisions of the Civil Code, §3933, with regard to charging notice where a person has knowledge of facts sufficient to put him upon inquiry.

If the testimony of the witnesses was not sufficient to affect Williams with notice, what else does the record disclose tending to such a conclusion? It appears that the junior deed which Raines executed, to wit, the deed from Raines to Ruth D. Walker and Ritie Anna Walker and Lena A. Walker, and under which the plaintiff claims, recites the substance of a certain petition to the superior court by W. E. Walker and the judgment entered thereon, both of which were duly filed in the office of the clerk of the superior court. The petition and order clearly and fully set forth the plaintiff's interest in the property, and the recitals of the petition in the deed referred to, if Williams knew of that deed, were sufficient to impart notice of the plaintiff's equitable title. This deed was executed in 1892, before Williams purchased in 1901. If Williams had notice either of this deed or of the proceedings in the superior court, such notice would be sufficient to charge him with notice of the plaintiff's equitable title. There is no evidence,

however, to show that he had actual notice of either, nor is there any evidence to show that he had actual notice of any fact sufficient to charge him with notice of either. The record before us does not disclose that the deed from Raines to Ruth D. Walker and Ritie Anna Walker and Lena A. Walker was recorded. In the absence of evidence to that effect, there is no presumption of law that it was recorded. This eliminates the idea of constructive notice by a duly recorded deed. The only remaining inquiry must therefore be addressed to the question of whether the record before the judge of the superior court in the matter of the application of W. E. Walker to obtain authority to have Raines execute the deed to Ruth D. Walker and Ritie Anna Walker and Lena A. Walker was of such character as in law to charge Williams with notice of the plaintiff's outstanding equity. It does not appear that these proceedings were entered upon the minutes of the court, but it does appear that they were filed in the office of the clerk of the court, that they were regular in all respects, and complied with the requirements of the Civil Code, §§ 2545-6. The law requires the proceedings to be entered upon the minutes of court, and the presumption is that the officers did their duty. It may therefore be presumed that the proceedings did appear upon the minutes of court. So the question is finally resolved to the inquiry as to whether a matter of this character appearing upon the minutes of court is sufficient to charge notice of an outstanding adverse equity, to a purchaser for value from the holder of the legal title, who, at the time, was in actual possession. The doctrine of lis pendens will not apply, first, because there was no suit between the parties, and, secondly, because the matter had long been concluded in court before the purchase by Williams. See Civil Code, § 3936. The record does not disclose knowledge by Williams, at the time of his purchase, of anything to indicate to him that the property had been before the court. For the purpose of giving constructive notice of deeds, the law makes provision for their record in the office of the clerk of the superior court of the county where the land lies (Civil Code, § 3618) ; and the law makes it the duty of the clerk of that court "to keep well-bound books for recording all deeds, mortgages, and other liens and bills of sale separately." Civil Code, § 4360, par. 9. A deed can not be said to be properly recorded unless it be entered upon the book designated for that pur-

pose. In *Beverly* v. *Burke,* 9 *Ga.* 440, this court ruled that the fact that the deed "was recorded on the minutes of the superior court in the course of the proceedings instituted for its establishment does not dispense with the statutory requirement of registration." One of the objects of the law in requiring deeds to be recorded being to charge constructive notice to persons who have not actual notice (Civil Code, §3618), unless the statute is strictly complied with there will be no constructive notice. It required an express statute to render the record of a deed constructive notice of the contents thereof. The record of a contract or a paper of any kind not authorized by law to be recorded is not constructive notice of what the paper contains. In order to admit a deed to record it must be executed with certain formalities. If a deed not executed according to those formalities be entered upon the proper registry as a recorded deed, it will not be notice to a purchaser for value. In *Gardner* v. *Granniss,* 57 *Ga.* 557, it is said: "When a deed is well recorded, everybody must be presumed to know of the record, for certain purposes; but where not well recorded, the presumption of ignorance holds, until actual knowledge or information of the record is clearly proved." Under the statute, it is no less important that the deed be entered upon the proper registry book than that it be properly executed. There has been no statute requiring that the entry of a deed upon the minutes of court, or that a mere recital of a matter on the minutes of court, should, in the absence of actual knowledge of some fact sufficient to challenge inquiry, have the effect of charging constructive notice of a secret equity to a purchaser for value. In the matter of specific performance, which may involve a proceeding where the doctrine of lis pendens may apply, it is expressly provided by the Civil Code, §4852, that "such decree, certified by the clerk, shall be recorded in the registry of deeds in the county where the land lies, and shall stand in place of a deed." If the minutes of the court were sufficient to charge notice to all persons of the equities established by the decree, it is not apparent upon what reason express legislation was had requiring the record of such decree in the registry of deeds. We do not think that the mere registry of the proceedings in question upon the minutes of the superior court was sufficient to charge Williams with notice of the recitals of fact contained therein. When Williams went to purchase from Walker, Walker

was found in possession, and was presumably in possession as of his own right. Civil Code, § 3931. There is a manifest distinction between this case and that line of cases where the purchase was from another than the person who was in possession. Viewing the case from every standpoint, as presented by the record, it does not appear that the plaintiff has supported the burden of proving notice to Williams of the existence of her equitable title at the time of the purchase by him. The plaintiff did not have the legal title, because her grantor, Raines, having previously conveyed to the defendant's grantor, had nothing left to be conveyed to the plaintiff by the deed under which she claimed. The plaintiff could not recover upon the strength of her equitable title, for the reason that, under the evidence as disclosed by the record, the defendant was a bona fide purchaser for value.

2. Over the objection that the testimony contradicted and varied the terms of the deed, the court permitted G. C. Raines, the common grantor, to testify: "I made it to him individually, but with the understanding that it was not to be of force unless he procured an order authorizing him to sell me his children's land and let me convey to his children this land in dispute." It was competent, by parol, to prove all the circumstances attending the transaction which would have the effect to charge the conscience of Walker and imply a trust in favor of those whose property constituted the consideration moving to the execution of that deed. If the land of Walker's wife and children was the real and only consideration of the deed, while by taking the deed to himself he became the holder of the legal title, yet in equity the wife and children were the true owners, and Walker could be compelled to make them a conveyance, or recognize that he held the legal title in trust. But the parol evidence which was objected to did not go to that point. It was directed only to the legal sufficiency of the deed, and was an effort to make it speak contrary to its terms. The deed was unambiguous, and expressly conveyed present title. The parol evidence seeks to fix a future time and engraft a contingency with respect to the vesting of legal title. For that purpose the evidence was not admissible.

*Judgment reversed. All the Justices concur.*

EVANS, J., concurring specially. I concur in the result, but not in all the reasoning of the majority opinion. I think the court

erred in directing a verdict for the plaintiff, and that he should have left to the jury to find, from the proof submitted, whether the defendant, at the time of his purchase, had notice of such facts as would put a reasonably prudent man upon inquiry of the plaintiff's equity. _Phillips_ v. _Adair, 59 Ga._ 371.